UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIANNA ZHAO, *on behalf of herself, FLSA Collective Plaintiffs, and the Class*, <br><br> Plaintiff, <br><br> -v.- <br><br> SURGE PRIVATE EQUITY LLC *d/b/a* SURGE PRIVATE EQUITY; HIPPODROME SERVICES CORP. *d/b/a* HIPPODROME SERVICES; HIPPODROME LLC *d/b/a* HIPPODROME SERVICES LLC; and DOUGLAS KOPELMAN, <br><br> Defendants. | 22 Civ. 7314 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Marianna Zhao brings this action for violations of the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and certain provisions of the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190-199-a, 650-665, alleging that Defendants Surge Private Equity LLC, Hippodrome Services Corp., Hippodrome LLC, and Douglas Kopelman failed to pay Plaintiff the wages due to her because of their unlawful policies of time-shaving and rounding down hours worked. Plaintiff now moves for conditional certification of a collective action and related relief under Section 216(b) of the FLSA. Plaintiff also moves for equitable tolling of the statute of limitations on behalf of putative collective members. For the reasons that follow, the Court grants in part Plaintiff's motion for conditional certification, and denies without prejudice Plaintiff's motion for equitable tolling.

**BACKGROUND**[1]

A.    **Factual Background**[2]

1.    **The Parties and Relevant Policies**

Plaintiff worked as a cleaner at Defendants' commercial laundry operation in the Bronx from June 2012 to December 1, 2019, and again from April 2020 to June 30, 2020.  (Compl. ¶ 24; Zhao Decl. ¶ 1).  From June 2012 to June 2016, Plaintiff worked from 9:00 a.m. to 5:00 p.m. five days per week. (Zhao Decl. ¶ 4).  Beginning in June 2016 through the end of Plaintiff's employment with Defendants, Plaintiff worked from 8:00 p.m. to 4:00 a.m. five days per week.  (*Id.*).  Plaintiff was paid the New York City minimum wage rate until December 1, 2019 (*id.* ¶ 5); thereafter, she was paid $15.20 per hour until the end of her employment (*id.*).

---

[1]    The facts in this Opinion are drawn from the Complaint (Dkt. #1 ("Compl.")), and the Declaration of Plaintiff Marianna Zhao submitted in support of Plaintiff's motion for conditional certification (Dkt. #24 ("Zhao Decl.")).  The Court also references Plaintiff's proposed notice and consent to sue form, filed as Exhibit A to the declaration of C.K. Lee (Dkt. #23-1 ("Lee Decl., Ex. A")).

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of her motion for conditional certification as "Pl. Br." (Dkt. #22); to Defendants' opposition memorandum of law as "Def. Opp." (Dkt. #25); and to Plaintiff's reply memorandum of law as "Pl. Reply" (Dkt. #26).

[2]    Plaintiff bears the burden on a Section 216(b) motion.  Accordingly, the Court focuses primarily on Plaintiff's account of the facts at this stage of the litigation.  *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a motion for conditional certification).  The Court "grant[s] the plaintiff the benefit of the doubt given the posture of this motion."  *Williams* v. *Movage Inc.*, No. 17 Civ. 2628 (KPF), 2018 WL 1940435, at *1 n.2 (S.D.N.Y. Apr. 24, 2018) (quoting *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013)).  By contrast, the Court cannot and does not consider the factual assertions contained in Defendants' opposition brief.  *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *3 (S.D.N.Y. Aug. 10, 2015); *see also Bhumithanarn* v. *22 Noodle Market Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015).

Plaintiff claims that Defendants engaged in various violations of the FLSA and NYLL while she was employed. Beginning in August 2019, Plaintiff was required to clock out for thirty-minute meal breaks during her shifts. (Compl. ¶¶ 29-30; Zhao Decl. ¶ 6). However, approximately twice per week the arrival of a laundry truck interrupted Plaintiff's break, requiring her to load the truck during her break. (Compl. ¶ 29; Zhao Decl. ¶ 6). What is more, approximately three times per week, "Plaintiff would be too busy and unable to take a meal break"; nonetheless, Defendants automatically deducted a thirty-minute break from her pay each day. (Compl. ¶ 30; Zhao Decl. ¶ 6). Also beginning in August 2019, Plaintiff was required to arrive at work approximately fifteen minutes before the start of each shift and to stay approximately thirty minutes after each shift had ended; Plaintiff was not compensated for this pre- and post-shift work. (Zhao Decl. ¶ 10). Finally, Plaintiff avers that Defendants implemented a time-rounding policy during the entirety of her employment, whereby hours were rounded down to the nearest fifteen-minute increment. (*Id.* ¶ 15).

Defendant Private Surge Equity purchased Defendant Hippodrome Services in July 2019, and installed Defendant Douglas Kopelman as CEO; the company now operates as Hippodrome Services LLC. (Compl. ¶ 27; Zhao Decl. ¶ 2). Hippodrome Services LLC provides laundry services to high-end hotels across the New York City-area. (Zhao Decl. ¶ 2).

### 2.    The Collective Allegations

Plaintiff avers that Defendants applied their time-shaving and rounding policies widely.  She notes that during her employment, she "regularly observed and spoke with my fellow non-managerial coworkers regarding our wages[,]" including eight coworkers identified in Plaintiff's submissions by their first names: Hilda, Francisca, Sonia, Rosa, Olivia, Amelia, Susana, and Teresa. (Zhao Decl. ¶ 3).  These eight individuals held various positions at Hippodrome, including as dry cleaners, launders, ironers, linen workers, and "all other positions as necessary." (*Id.*).  Similar to these eight coworkers, Plaintiff "was required to help fill in for any position on an as needed basis." (*Id.*).

Specifically, Plaintiff recalls a variety of conversations with these coworkers pertaining to Defendants' alleged violations.  For example, Plaintiff and her coworkers complained to each other about underpayment of wages over coffee and as they ran into each other at work.  (Zhao Decl. ¶ 7).  Certain of Plaintiff's coworkers, like Teresa, had previously complained to management about Defendants' time-shaving, but nothing was done to redress the issue. (*Id.* ¶ 8).  Likewise, Plaintiff and her coworkers expressed their frustrations that they were required to work through their meal breaks despite having clocked out. (*Id.* ¶ 9).  During the summers of 2019 and 2020, two of Plaintiff's coworkers began complaining more about being required to work after clocking out for the end of a shift, "as it was already hot when they were working and the summer heat" exacerbated the situation.  (*Id.* ¶ 11; *see also, e.g.*, *id.* ¶ 12 ("We would always be depressed that we had to perform this work off the clock

before and after our shift started, but because everyone was doing it, we feared what would happen to us if we did not comply.")).  Plaintiff recalls that many of her conversations with coworkers about Defendants' alleged time-shaving and rounding policies occurred on the weekends, when they received and reviewed their paychecks with each other.  (*Id.* ¶ 17).

## B.    Procedural Background

Plaintiff initiated this action by filing the Complaint on August 26, 2022. (Dkt. #1).  On November 3, 2022, Defendants filed their answer to the Complaint.  (Dkt. #14).  On November 29, 2022, the Court held an initial pre-trial conference with the parties.  The Court entered the parties' case management plan shortly thereafter (Dkt. #18), and endorsed the parties' proposed briefing schedule on the instant motion on December 13, 2022 (Dkt. #20).

Plaintiff filed her motion for conditional collective certification and supporting papers on January 6, 2023.  (Dkt. #21-24).  Defendants then filed their opposition memorandum of law on January 20, 2023.  (Dkt. #25).[3]  On January 27, 2023, Plaintiff filed her reply memorandum of law in further support of her motion.  (Dkt. #26).

---

[3]     Plaintiff is correct that Defendants violated Rule 4.B. of this Court's Individual Rules of Practice in Civil Cases with respect to the formatting of their opposition memorandum of law.  (Pl. Reply 1).  The Court will accept Defendants' submission, but trusts that Defendants will be more careful in adhering to this Court's rules in the future.

## DISCUSSION

### A.      Applicable Law

#### 1.       The FLSA Generally

The FLSA permits aggrieved employees to bring collective actions against their employers for unlawful employment practices.  The statute authorizes suits "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Unlike class actions brought under Federal Rule of Civil Procedure 23, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness.  *Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); Fed. R. Civ. P. 23(a).  "Also unlike Rule 23, only potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment or benefit from it.'"  *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)).  District courts may, in their discretion, "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers* v. *Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Hoffmann-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 169 (1989)).

#### 2.       Collective Certification Under Section 216(b) of the FLSA

The Second Circuit has endorsed a two-step method to certify FLSA collective actions.  *Myers*, 624 F.3d at 555; *accord Scott* v. *Chipotle Mexican*

*Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020).  At the first step, courts consider whether "to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citations omitted).  Plaintiffs bear a low burden at the first step: they need only "make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015).  Upon such a showing, plaintiffs may send notice to other potential plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555.  "Because minimal evidence is available at this stage, this determination is made using a 'relatively lenient evidentiary standard.'" *McGlone* v. *Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Mentor* v. *Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)).  "However, certification is not automatic." *Taveras* v. *D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018).  "Although a plaintiff's factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations." *Id.*

At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555.  This second step "typically occurs after the completion of discovery[.]" *Bifulco* v. *Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  At the latter stage, the court may "'decertify the class or divide

it into subclasses, if appropriate.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting

*Iglesias-Mendoza* v. *La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007)).

In deciding a conditional certification motion, "'the court does not resolve

factual disputes, decide substantive issues going to the ultimate merits, or

make credibility determinations.'" *Winfield* v. *Citibank, N.A.*, 843 F. Supp. 2d

397, 402 (S.D.N.Y. 2012) (quoting *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F.

Supp. 2d 638, 644 (S.D.N.Y. 2010)).  Courts in this District have therefore held

that a FLSA collective action may be conditionally certified based upon even a

single plaintiff's affidavit.  *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760

(KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases).

## B.   Analysis

### 1.   The Court Will Conditionally Certify a Collective Action Limited to Certain Categories of Workers

Plaintiff seeks conditional certification of a collective of "all current and

former non-exempt employees (such as dry cleaners, pressers, packers,

laundry workers, linen section workers, and ironing workers, among others)

employed by [Defendants] … on or after the date that is six (6) years before the

filing of the Complaint." (Dkt. #21-1).  Defendants oppose conditional

certification on two bases: (i) putative collective members are not similarly

situated — *i.e.*, they were not "victims of a common policy or plan that violated

the law" (Def. Opp. 3 (internal citation omitted)); and (ii) the proposed collective

is overbroad and should be limited to cleaners only (*id.* at 6).  The Court finds

that conditional certification is warranted, albeit of a more circumscribed group

of workers than Plaintiff seeks.

8

### a.   Common Policy or Plan

The Court finds that Plaintiff has met her modest burden of showing that she and others were subject to a common policy or plan that violates the FLSA. The thrust of Defendants' argument that Plaintiff has not shown that there are similarly-situated potential opt-in plaintiffs is that Plaintiff's affidavit is not sufficiently detailed or specific.  (Def. Opp. 3-4).  A plaintiff cannot meet her burden at the first step of the certification inquiry by relying upon "unsupported assertions," *Myers*, 624 F.3d at 555 (quoting *Dybach* v. *Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991)), or "conclusory allegations[,]" *Sanchez* v. *JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (internal citation omitted).  But in this case, Plaintiff has provided more.

Although Plaintiff relies on only her affidavit in support of certification, she provides myriad details regarding Defendants' alleged violations pertaining to time-shaving and rounding as to the identified coworkers.  For example, Plaintiff recalls a specific conversation with Teresa during which Teresa was "extremely disgusted" by Defendants' practice of not paying employees who worked through meal breaks, as Teresa had already complained to management about the issue.  (Zhao Decl. ¶ 8; *see also id.* ¶ 9 (recalling that Hilda, Francisca, Sonia, Rosa, Olivia, Amelia, and Susana complained about the same practice, and that such conversations took place during their commutes or while they were working together in close proximity)).  Likewise, Plaintiff states that Hilda's and Sonia's complaints regarding post-clocking-out

work grew more vociferous in the summers of 2019 and 2020, "as it was already hot when they were working and the summer heat" exacerbated their frustrations.  (*Id.* ¶ 11; *see also id.* ¶ 14 (detailing similar conversations with coworkers while walking to the 6 train)).  The same is true of Defendants' rounding policy.  (*See, e.g.*, *id.* ¶ 16 ("Susana would complain that it felt like we were just constantly working for Defendants and never got paid for all the hours we worked.")).

These types of factual details pertaining to numerous of Plaintiff's coworkers are more than enough to satisfy Plaintiff's modest burden that other putative opt-in plaintiffs were subject to a common policy or plan violative of the FLSA.  *See, e.g.*, *Islam* v. *LX Ave. Bagels, Inc.*, No. 18 Civ. 4895 (RA) (RWL), 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (granting conditional certification where plaintiffs "name[d] or otherwise identif[ied] specific employees that were subject to the same unlawful compensation policies" (internal quotation marks omitted)); *Iriarte* v. *Café 71, Inc.*, No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *4 (S.D.N.Y. Dec. 11, 2015) (certifying collective based on plaintiff's declaration that "he ha[d] personal knowledge from his observations and his conversations with his coworkers"); *see also Campos* v. *Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF), 2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) (same, where plaintiff provided "specific details of conversations he had with [certain named coworkers] about not being able to take the entirety of their lunch break, as well as conversations with [others about] never being paid his full hourly wages" (internal citations omitted)).

Defendants' proffered cases are entirely distinguishable.  For example, in *Reyes Cruz* v. *70-30 Austin St. Bakery Inc.*, the court found that the plaintiff's single affidavit did not meet the low threshold for conditional collective certification because it did not detail where conversations pertaining to wage and hour violations took place; did not include details pertaining to hours worked by putative collective members, a key part of an overtime claim; and "offer[ed] only the conclusory assertion that the [identified] other employees were not paid overtime."  No. 18 Civ. 7408 (PAE) (HBP), 2019 WL 1929910, at *5-6 (S.D.N.Y. May 1, 2019).  Likewise, in *Shanfa Li* v. *Chinatown Take-Out Inc.*, the court found that the plaintiffs failed to meet the requisite evidentiary burden for conditionally certifying a broad class of all non-exempt non-managerial employees and a smaller collective of fry woks and miscellaneous workers.  No. 16 Civ. 7787 (JCM), 2018 WL 1027161, at *4-5 (S.D.N.Y. Feb. 21, 2018).  As to the former group, the court found that plaintiffs entirely failed to (i) identify the names of any coworkers; (ii) put forth evidence about their hours; or (iii) offer facts that "they observed other non-managerial employees working similar hours or receiving similar treatment."  *Id.* at *4.  As to the latter, smaller group, the plaintiffs failed to include in their affidavits "any factual allegations specific to other fry woks and miscellaneous workers."  *Id.* at *5.  As noted, Plaintiff's observations and allegations here are a far cry from these barebones affidavits; she avers that specific coworkers suffered from the same violations she did, and details when she learned such information and how.  To the extent that Defendants demand the last names of the identified

11

coworkers for Plaintiff to meet her burden at this stage (Def. Opp. 5), Defendants offer no authority in support of such requirement and the Court is aware of none.  *See Barron* v. *Casa Luis Corp.*, No. 20 Civ. 2713 (GRB) (ST), 2022 WL 2467595, at *5 (E.D.N.Y. Jan. 21, 2022) (recommending conditional certification of collective of busboys despite affidavits omitting last names of such workers).

In sum, the Court finds that Plaintiff has alleged sufficient facts to show that Defendants implemented a common scheme or policy that violates the FLSA.

### b.    Scope of the Collective

Beyond the threshold issue of articulating a common policy, Defendants also contend that Plaintiff's proposed collective is too broad.  (Def. Opp. 6). Specifically, Defendants argue that any collective should be limited to cleaners only, as that was Plaintiff's position.  (*Id.*).  Plaintiff, on the other hand, seeks conditional certification of a larger group encompassing all non-exempt employees.  (Pl. Reply 9).

"A FLSA collective may cover individuals with multiple job functions 'provided that [the employees] are subject to a common unlawful policy or practice.'"  *Gomez* v. *Kitchenette 123 Inc.*, No. 16 Civ. 3302 (AJN), 2017 WL 4326071, at *5 (S.D.N.Y. Sept. 5, 2017) (quoting *Zaldivar* v. *JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 323 (E.D.N.Y. 2016)).  Where a plaintiff fails to provide sufficient details that such common unlawful policy or practice also affected employees in different job functions or roles, courts will limit the collective to

only those job functions for which the plaintiff bore his or her evidentiary

burden.  *See, e.g.*, *id.* (conditionally certifying collective of delivery persons, but

not all tipped employees, because "the assertions in the affidavit that go

beyond delivery persons are insufficiently detailed to justify certification of a

broader collective").

Plaintiff has met her modest burden of showing that a collective of

certain specified positions should be conditionally certified.  As discussed,

Plaintiff's affidavit contains detailed factual representations from eight different

coworkers.  (*See generally* Zhao Decl.).  And those coworkers all worked in

various positions for Defendants, including as dry cleaners, launders, ironers,

linen workers, and packers.  (*Id.* ¶ 3 (chart listing coworkers' designated

assignments); *see also id.* ¶ 8 (recalling specific discussion with Teresa, a linen

worker, about violations), *id.* ¶ 11 (same with respect to Hilda and Sonia, both

of whom worked in various positions for Defendants)).  As Plaintiff put forth

sufficient evidence to show a common policy or scheme based on these

coworkers' statements, it logically follows that the putative FLSA violations

extend to these coworkers' positions as well.  *See, e.g.*, *Summa* v. *Hofstra Univ.*,

715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010) ("That there are variations in

positions and job functions do not, at this preliminary stage, change the result.

Under these circumstances, Judge Lindsay's determination that conditional

certification was proper cannot be labeled clearly erroneous or contrary to

law."); *Iglesias-Mendoza*, 239 F.R.D. at 368 (rejecting defendants' argument

that collective should be limited to duck feeders, rather than all poultry

workers, because plaintiffs put forth evidence that "their experience was shared by members of the [broader] proposed class"); *see also Guaman* v. *5 M Corp.*, No. 13 Civ. 3820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) ("Plaintiff has met the minimal evidentiary burden necessary at this stage for the Court to determine that he is similarly situated to all non-exempt employees, including cooks, line-cooks, dishwashers, food preparers, porters, runners, bussers, waiters, barbacks and bartenders at Murano Ristorante/Delmonico Kitchen[.]" (collecting cases)).

Because Plaintiff has provided factual support that Defendants' alleged policies impacted a number of positions — including dry cleaners, pressers, packers, laundry workers, linen section workers, and ironing workers — the Court finds that conditional certification of a collective larger than cleaners is warranted. As before, this case is unlike Defendants' lead authority, *Mata* v. *Foodbridge LLC*, where a sister court in this District found that certifying a collective of cooks, line-cooks, food preparers, and various other positions was unwarranted, because the plaintiff — a pizza counterperson — "provide[d] no factual support demonstrating knowledge of a common scheme impacting the diverse array of employees covered in his [c]omplaint." No. 14 Civ. 8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015). Though Defendants dispute Plaintiff's representations that her coworkers held multiple positions and filled in with respect to others because "[e]mployees for Hippodrome were in specific positions and there was no crossover between jobs" (Def. Opp. 7), "[a]t this procedural stage, the court does not resolve factual disputes, decide

14

substantive issues going to the ultimate merits, or make credibility determinations," *Diaz* v. *N.Y. Paving Inc.*, 340 F. Supp. 3d 372, 382 (S.D.N.Y. 2018) (quoting *Lynch* v. *United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

Plaintiff has submitted sufficient evidence that Defendants' alleged policies impacted many workers beyond cleaners.  But to the extent that Plaintiff seeks a collective of *all* non-exempt current and former employees of Defendants, Plaintiff asks for too much.  Plaintiff has provided no information — at least, no non-conclusory information — that Defendants' alleged practices affected employees in positions other than those discussed above.  Thus, the Court will instead conditionally certify a collective of all dry cleaners, pressers, packers, laundry workers, linen section workers, and ironing workers, as Plaintiff submitted information substantiating that workers in such positions were subject to a common unlawful compensation policy. *See, e.g.*, *Zhang* v. *Hiro Sushi at Ollie's Inc.*, No. 17 Civ. 7066 (DF), 2019 WL 699179, at *11 (S.D.N.Y. Feb. 5, 2019) ("[T]o the extent [p]laintiffs seek to define the FLSA collective as including 'all non-exempt employees' … or, indeed, any job titles other than delivery workers, oil woks, water woks, and fry woks, [p]laintiffs' motion for conditional certification is denied."); *Chui* v. *Am. Yuexianggui of LI LLC*, No. 18 Civ. 5091 (SJF) (AKT), 2020 WL 3618892, at *8 (E.D.N.Y. July 2, 2020) (similarly limiting certification where plaintiff sought collective of "all non-exempt and non-managerial employees"); *Jian Wu* v. *Sushi*

*Nomado of Manhattan, Inc.*, No. 17 Civ. 4661 (PGG) (DF), 2019 WL 3759126, at *10 (S.D.N.Y. July 25, 2019) (same).[4]

### 2.    The Court Orders Pre-Certification Discovery

Having found that conditional certification of a collective is appropriate, the Court considers the remainder of Plaintiff's motion.  Plaintiff seeks an order compelling Defendants to timely produce "within ten (10) days of [this] Order a list of all Covered Employees in Excel format who were employed by Defendants at any point in the six (6) year prior to the entry of the Order with the following information: names, titles, compensation rates, date of employment, last known mailing addresses, email addresses, and all known telephone numbers." (Pl. Br. 12-13).  Defendants have not opposed this request, and the Court finds that production of such information is warranted within fourteen, rather than ten, days from the entry of this Opinion and Order, in line with Circuit-wide precedent.  *See, e.g.*, *Benavides* v. *Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) ("Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." (internal citations omitted) (collecting cases)).  However, as explained in the Court's discussion of the appropriate temporal scope of the notice, *infra*, Plaintiff is only entitled to the above-discussed information for

---

[4]    It may be the case that Defendants do not in fact employ other non-exempt employees beyond these categories of workers, in which case this limit may prove a nullity.

employees who worked for Defendants within three years prior to the filing of the Complaint in this case.

### 3.     The Court Orders Modified Notice

The Court next addresses the scope and substance of the notice that will be provided to putative members of the collective.[5]  The Court has reviewed Plaintiff's proposed notice, submitted with her motion for conditional certification.  (Lee Decl., Ex. A).  Defendants raise only one specific objection to Plaintiff's proposed notice: that the notice period should be limited to three, rather than six, years.  (Def. Opp. 7).[6]  Ultimately, the Court approves Plaintiff's proposed notice with certain modifications described below.

### a.     The Temporal Scope of the Notice and Opt-In Period

The Court begins with issues related to the temporal scope of the proposed notice — including the appropriate statute of limitations and equitable tolling — and the length of the opt-in period.  Defendants contend that Plaintiff's proposed six-year notice period is excessive, as the FLSA has a maximum three-year statute of limitations.  (Def. Opp. 7).  Plaintiff does not dispute this point, but instead suggests that because the Complaint also

---

[5]     Plaintiff also submitted a proposed "Consent to Sue" form alongside her proposed notice.  (Lee Decl., Ex. A).  Defendants have not raised any objections to this proposed form, and thus the Court grants Plaintiff's motion to distribute the form.  However, Plaintiff is directed to amend the form to provide for a 60-day opt-in period, to be consistent with the amended notice.  *See infra.*

[6]     Defendants also objected to the inclusion of workers beyond cleaners in their discussion regarding the proposed notice.  The Court addressed this issue in its discussion of conditionally certifying a collective.

alleges NYLL claims, it would "promote judicial efficiency and the remedial aims" of both statutes to allow for a six-year notice period.  (Pl. Reply 9).

The FLSA has a three-year statute of limitations for willful violations of its overtime provisions.  *Glass* v. *A.K. Allen Co., Inc.*, No. 10 Civ. 804 (ADS) (ETB), 2010 WL 11632764, at *2 (E.D.N.Y. Oct. 21, 2010).  Sensibly, then, courts often set a notice period for three years before the filing of the complaint in a FLSA case.  *See, e.g.*, *Mongiove* v. *Nate's Corp.*, No. 15 Civ. 1024 (NGG) (RML), 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016).  "Some courts in the Second Circuit have permitted six-year notice periods in conditionally certified FLSA collective actions which also involve NYLL claims" to account for the NYLL's six-year statute of limitations.  *Franze* v. *Bimbo Foods Bakeries Distrib., LLC*, No. 17 Civ. 3556 (NSR) (JCM), 2019 WL 1417125, at *4 (S.D.N.Y. Mar. 29, 2019) (collecting cases).  But "the growing trend in this Circuit is ... to use a three-year rather than a six-year notice period when the motion before the court seeks certification under the FLSA rather than under Federal Rule[] of Civil Procedure Rule 23 in connection with NYLL claims."  *Id.* (collecting cases).  This is so because courts have recognized that authorizing notice of FLSA-only claims to putative collective members who are otherwise time-barred from bringing claims may promote confusion should counsel later move for class certification of NYLL claims.  *See, e.g.*, *Bhumithanarn* v. *22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (collecting cases).

18

Because the only motion currently before the Court is a motion for conditional certification of a collective under the FLSA, and because the Court cannot be assured at this stage that counsel will later seek certification of an NYLL class, much less be successful in doing so under Rule 23, the Court does not find a six-year notice period to be appropriate.  Instead, the Court authorizes notice be sent to the relevant putative collective members for the three years prior to the filing of the Complaint on August 26, 2022.

Having determined that the appropriate notice period is three years prior to the filing of the Complaint, the Court turns to the related issue of equitable tolling.  Defendants have not opposed Plaintiff's request that the FLSA statute of limitations be tolled "until such time that Plaintiff is able to send notice to potential opt-in plaintiffs."  (Pl. Br. 14).  "Because equitable tolling issues often arise as to individual opt-in plaintiffs ..., courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  *Yap* v. *Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Gaspar* v. *Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)); *see also Douglas* v. *Anthem Prods., LLC*, No. 18 Civ. 5789 (VEC), 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) (collecting cases and explaining that "[w]hether tolling is appropriate [for potential members of the FLSA collective action] is best addressed on an individual basis").  As such, though Plaintiff's tolling request is unopposed, the Court finds that "it is

19

unnecessary to determine this issue now, as 'it is not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice.'" *Mendoza*, 2013 WL 5211839, at *10 (quoting *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)).  The Court will "consider an application from any opt-in plaintiff based on an individualized showing that tolling is appropriate."  *Yuefeng Shi* v. *TL & CG Inc.*, No. 19 Civ. 8502 (SN), 2020 WL 4586359, at *6 (S.D.N.Y. Aug. 10, 2020); *see also Katz* v. *Equinox Holdings, Inc.*, No. 20 Civ. 9856 (VEC), 2022 WL 2952143, at *3 (S.D.N.Y. July 26, 2022) (adopting a similar approach).

Finally, Plaintiff's proposed notice includes a ninety-day opt-in period. (Lee Decl., Ex. A).  However, "[c]ourts in this Circuit routinely restrict the opt-in period to 60 days."  *Sharma* v. *Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) (citations omitted); *see also, e.g.*, *Yap*, 146 F. Supp. 3d at 556-57 (same); *Escano* v. *N&A Produce and Grocery Corp.*, No. 14 Civ. 4239 (PAC), 2015 WL 1069384, at *3 (S.D.N.Y. Mar. 11, 2015) (ordering a sixty-day opt-in period when the plaintiff "[did] not explain why a 90-day period is necessary").  Plaintiff has not explained why a longer-than-usual opt-in period is necessary. As such, the Court will limit the opt-in period to sixty days.

### b.    The Content of the Notice

Defendants have not objected to the proposed content of the notice.  (Lee Decl., Ex. A).  Other than the temporal scope and fact that the Court has limited the collective to certain defined categories of workers discussed above, the Court generally approves of Plaintiff's proposed notice.  Indeed, Plaintiff's

proposed notice includes much of the standard information courts in this District require.  *See, e.g.*, *Shi*, 2020 WL 4586359, at *4-5 (describing the requisite notice contents).  However, Plaintiff's proposed notice should be supplemented to include defense counsel's contact information.  *See, e.g.*, *Norris* v. *ProCORE LLC*, No. 21 Civ. 7014 (BMC), 2022 WL 1205143, at *6 (E.D.N.Y. Apr. 22, 2022) ("Inclusion of a defendant's identity and contact information is common in this District.").

### c.   The Form and Method of Distribution

Plaintiff requests that the Court permit her to disseminate the notice by mail, email, and text messages; that the notice be provided to prospective opt-in plaintiffs in both English and Spanish; and that the notice be posted at Defendants' places of business.  (Pl. Br. 13-14; Dkt. #21-1 (proposed order)).  The Court approves sending the notice by mail, email, and text messages, which methods of distribution have become standard in this Circuit.  *See, e.g.*, *Lijun Geng* v. *Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019); *Knox* v. *John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017).  The Court also grants Plaintiff's request that the notice be posted in employee common areas at Defendants' places of business.  *See, e.g.*, *Geng*, 2019 WL 4493429, at *20. Finally, the Court grants Plaintiff's request that the final version of the notice be translated to Spanish, given Plaintiff's representation that many putative opt-in plaintiffs are likely to be native Spanish speakers.  *See, e.g.*, *Valerio* v. *RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) ("Generally, courts permit

notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." (internal quotation marks and citation omitted)).

**CONCLUSION**

Plaintiff's motion for conditional certification of a collective and for Court facilitation of notice is GRANTED IN PART and DENIED IN PART.  Specifically, the Court grants Plaintiff's motion for conditional certification of a collective of dry cleaners, pressers, packers, laundry workers, linen section workers, and ironing workers employed by Defendants within the three years prior to the filing of the Complaint in this action.  The Court DENIES Plaintiff's request for equitable tolling of the statute of limitations at this time.

Plaintiff's motion to send out the proposed notice to this putative collective is GRANTED in line with the modifications discussed in this Opinion. Plaintiff is directed to submit a revised proposed notice for the Court's approval consistent with this Opinion within 14 days of the date of this Opinion.  Upon this Court's approval of the revised notice, notice may be issued consistent with its terms and this Court's orders.

Defendants are ORDERED to provide Plaintiff, in Microsoft Excel or equivalent format, the names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers for all employees within the putative collective within 14 days of the date of this Opinion.

The Clerk of Court is directed to terminate the pending motion at docket entry 21.

SO ORDERED.

Dated:     May 16, 2023
           New York, New York

_____
           KATHERINE POLK FAILLA
           United States District Judge